FRANK K. AND SHARON K. YOUNG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Young v. Commissioner
Docket No. 14833-92
United States Tax Court
T.C. Memo 1993-595; 1993 Tax Ct. Memo LEXIS 617; 66 T.C.M. (CCH) 1592; December 16, 1993, Filed *617 Frank K. Young, pro se. For respondent: Edith F. Moates. PETERSON
PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for their taxable year 1987 in the amount of $ 1,233, and an addition to tax attributable to the deficiency under section 6651(a)(1) in the amount of $ 308. After concessions, the issues for decision are: (1) Whether petitioner Sharon K. Young is entitled to her claimed Schedule C deduction in the amount of $ 10,021 for commissions paid to petitioner Frank K. Young, and if not; (2) whether petitioner Frank K. Young received income from his activity with petitioners' wholly owned real estate company in excess of the amount determined by respondent. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. *618 Petitioners resided in Oklahoma City, Oklahoma, at the time their petition was filed. During the year in issue petitioners were real estate brokers certified by the Oklahoma Real Estate Commission, and were the sole shareholders of the First Place Realty Company (First Place), a closely held corporation engaged in the sale of commercial and residential real estate. Petitioner Frank K. Young (Mr. Young) also was engaged in the trade or business of oil exploration (a Schedule C business) during the year in issue. First Place was formed in 1984 by petitioner Sharon K. Young (Mrs. Young) and Mr. Travis Vaught, and during the company's first two years it failed to achieve a profit. Mr. Vaught lost interest in First Place shortly after it was formed, and refused to contribute to the management of the company or financially support the company during its early struggles. However, Mrs. Young desired to continue developing First Place despite its lack of success, and she loaned funds to the company to keep it afloat, and she occasionally consulted Mr. Young (who has a business background and legal training) for advice on how best to operate the company. In late 1985 or early 1986, Mr. *619 Young agreed to acquire Mr. Vaught's entire interest in First Place. After Mr. Young acquired his interest in First Place, Mrs. Young asked him to apply his business acumen to manage the company. Mr. Young agreed to manage First Place, and subsequent to his assuming that role, Mrs. Young's business activity primarily consisted of working on sales leads and showing properties to customers. Mr. Young also engaged in sales activity, but his time was heavily concentrated in managing First Place. Mr. Young took several significant steps to bolster First Place's real estate practice during his first year running the company. In 1987 he: (1) Negotiated First Place's acquisition of another real estate company; (2) quadrupled First Place's corporate office space; and (3) doubled the number of real estate agents working for the company. Further, Mr. Young was instrumental in setting up operations systems and in obtaining clients, and he also laid out much of First Place's advertising and directed much of its media placement. During the year in issue Mr. and Mrs. Young, as sole shareholders, agreed not to be paid by First Place on a regular salaried basis. The company had very limited *620 funds after paying expenses, and Mr. Young thought it best to keep most of the surplus cash in reserve until the company was financially more secure. However, while petitioners did not establish specific salary guidelines, they did resolve generally the manner in which each should be compensated during the year in issue. Essentially, petitioners agreed that, because Mr. Young not only managed the company but also participated in sales activity, he should receive two-thirds of whatever funds petitioners withdrew from the company during the year in issue as compensation for his services, and that Mrs. Young, whose primary activity involved sales, should receive one-third of those funds as compensation for her services. During the year in issue petitioners regularly discussed First Place's financial situation in order to determine whether funds could be withdrawn, and, in fact, several compensation payments were drawn from First Place's corporate checking account and written to Mr. Young in the sum total of $ 15,100. Although these checks were made payable to Mr. Young, they in fact represented income earned by both petitioners. The checks written to Mr. Young were prepared *621 by First Place's office manager, Susan Morley, who also prepared a Form 1099 to reflect the compensation payments. For some unknown reason, Ms. Morley prepared Form 1099 in Mrs. Young's name. In preparing petitioners' joint tax return for the year in issue, their accountant completed three separate Schedules C. One of the Schedules C reported a loss in the amount of $ 56,381 from Mr. Young's oil exploration business, and the other two reported the income and claimed deductions related to petitioners' respective participation in First Place. Petitioners' accountant understood Mr. and Mrs. Young's First Place compensation agreement for the year in issue, but was uncertain how to reflect their agreement on petitioners' return filed for the year in issue because the checks were made payable to Mr. Young, while the relevant Form 1099 was issued to Mrs. Young. Ultimately, petitioners' accountant thought it most advisable to report the entire $ 15,100 as gross receipts on Mrs. Young's Schedule C and to account for the First Place income earned by Mr. Young by: (1) Claiming a deduction for "commissions" on Mrs. Young's Schedule C in the amount of Mr. Young's First Place earned income *622 of $ 10,021; and then (2) reporting an amount equal to this deduction as gross receipts from First Place on Mr. Young's Schedule C. In this manner, petitioners' accountant believed that petitioners each would be reporting the proper amount of respective income earned from First Place, and at the same time would "avoid any type of problem" with respondent's computer matching program, which, generally, is designed to compare information received on certain payor documents with information reported on a return. As a result of their accountant's advice, Mrs. Young reported on her Schedule C gross receipts from First place in the amount of $ 15,122 ($ 22 unexplained), and she claimed a deduction for commissions paid to Mr. Young in the amount of $ 10,021 (66.3 percent of $ 15,122). After taking into account other claimed deductions, Mrs. Young reported on her Schedule C a net profit from First Place in the amount of $ 3,384. Corresponding to Mrs. Young's claimed commissions expense deduction, Mr. Young reported on his Schedule C attributable to his First Place activity gross receipts in the amount of $ 10,021. After taking into account other claimed deductions, Mr. Young reported a *623 net profit from his involvement with First Place in the amount of $ 9,916. In the notice of deficiency respondent disallowed Mrs. Young's claimed commissions deduction, decreased the amount of Mr. Young's reported First Place gross receipts by $ 10,021, and reallocated that amount to Mrs. Young as gross receipts from First Place. Respondent supports these adjustments by arguing: (1) That petitioners have not substantiated that Mr. Young rendered valuable services to First Place during the year in issue and that he therefore is not entitled to report gross receipts from First Place in any amount; and (2) that even if we conclude that Mr. Young in fact is entitled to report gross receipts from First Place, Mrs. Young is not entitled to a deduction for payment of the funds to Mr. Young because such payment is an expense of the corporation (i.e., First Place). In response, petitioners argue that Mr. Young rendered substantial services to First Place during the year in issue and received compensation in the amount of $ 10,021 for such services pursuant to an arm's-length agreement, and contend that while perhaps they should have reported their First Place income differently, they were *624 merely trying to correct an error in paperwork so that their returns would reflect the substance of their compensation agreement. Respondent's determinations are presumed correct, and petitioners bear the burden of proving that the determinations are erroneous. Rule 142(a); . Based on the record in this case, we agree with petitioners that Mr. Young rendered valuable services to First Place during the year in issue, and hold that he was compensated for such services pursuant to an arm's-length agreement he entered into with Mrs. Young as First Place's sole shareholders. However, we also conclude that petitioners did not properly report their earned income, and hold that Mrs. Young is not entitled to her claimed deduction for commissions. Essentially, respondent is concerned in this case that during the year in issue Mr. Young was a nonparticipant in First Place, and that the $ 10,021 petitioners claim he earned for services rendered to the company amounts to nothing more than the shifting of income from Mrs. Young to Mr. Young, for the purpose of offsetting $ 10,021 against the $ 56,381 loss Mr. Young reported *625 from his Schedule C oil exploration business, and thereby shielding the $ 10,021 from self-employment tax. However, in our view the record does not support respondent's position. In our opinion, we find that the record clearly shows that since Mr. Young acquired his interest in First Place he has contributed essential services driving its operation, and we find that Mr. Young performed important services to First Place during the year in issue and was largely, if not completely, responsible for directing the company's growth. We are satisfied in this case that Mrs. Young requested Mr. Young to step in and manage the company because she was unable to successfully do so, and that as compensation for the numerous tasks he would be required to be involved with (including sales) their agreement that Mr. Young would receive two-thirds of petitioners' First Place income during the year in issue, or $ 10,021, while Mrs. Young would receive only one-third, or $ 5,101, was a reasonable, arm's-length agreement. In reaching this conclusion, we are mindful that this case involves a business relationship between a husband and a wife who are also First Place's sole shareholders, but even under *626 the additional scrutiny accorded such relationships, we conclude that petitioners' business dealings were at arm's length. , affd. per curiam ; . However, based on the record we also conclude that petitioners failed to properly report their income earned from First Place. We realize that petitioners tried to properly reflect their income on their respective Schedules C and simultaneously reflect Ms. Morley's errantly prepared Form 1099, but it is well settled that business expenses are only deductible if in fact they are expenses of the taxpayer claiming the deduction, and not the expenses of another taxpayer. . There is no question in this case that the expense of compensating Mr. Young during the year in issue was an expense of First Place, and not an expense of Mrs. Young's. Accordingly, we hold that Mrs. Young is not entitled to a claimed deduction in the amount of $ 10,021 for *627 commissions for funds paid to Mr. Young from First Place during the year in issue. It follows that petitioners' First Place income will be properly reported by Mrs. Young's Schedule C showing gross receipts from First Place in the amount of $ 5,101 and no deduction in any amount of commissions, and by Mr. Young's Schedule C remaining unchanged (since it already shows gross receipts from First Place in the amount of $ 10,021). To reflect the foregoing, Decision will be entered under Rule 155.